# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-CR-42-TLS |
| | ) | |
| AUTUMN CARTER | ) | |

## OPINION AND ORDER

Defendant Autumn Carter pled guilty to attempt to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) and (b). The probation officer drafted a Final Revised Presentence Investigation Report (PSR) in preparation for sentencing. This Opinion and Order resolves the Defendant's objections to the PSR.

## BACKGROUND

On July 2, 2015, officers conducted surveillance in the area of the Southbridge Apartments in Fort Wayne, Indiana. Officers observed co-Defendants Christian Smith, Tyler McCarthy, Freddie Church, and Shaiki Sutton exit the Defendant's apartment and enter a 2006 white Pontiac. Shortly thereafter, officers observed the Defendant leave her apartment and get inside a red Chrysler. The two vehicles first stopped at a gas station, then continued on the interstate to Grant County, Indiana. The Defendant, in the red Chrysler, stopped at a gas station across the street from Via Credit Union, with a view of the credit union. Her co-Defendants, in the Pontiac, drove around the credit union four times. The two vehicles then left the area. On July 3, 2015, co-Defendant Smith was seen wiping off the handles of the Pontiac. Shortly thereafter, four males dressed in dark clothing exited the Southbridge Apartment complex in the white Pontiac, and a female wearing a blue dress got into the red Chrysler. The cars used the

same route they had used the previous day. The red Chrysler parked in the same spot at the gas station and the white Pontiac pulled into the credit union parking lot. The driver, front seat passenger, and rear driver-side passengers immediately exited the vehicle and ran to the credit union door. After pulling on the locked door,[1] they all turned and ran back into the car and fled towards the highway. The police units that had been in place stopped both cars. Co-Defendants Smith and Sutton had white zip-ties on their persons. The Defendants were taken into custody. Officers searched the vehicles, both registered in the Defendant's name, and found cloth gloves, cloths to be purportedly used as masks, and two weapons.

The Defendant was charged with conspiracy to affect commerce by threat or violence (Count 1), attempt to affect commerce by threat or violence (Count 3), and attempt to enter a credit union with the intent to commit bank robbery by force or violence and aiding and abetting (Count 4). On August 15, 2016, the Court accepted the Defendant's plea of guilty to Count 3 of the Indictment. Pursuant to the terms of a Plea Agreement, the Government agreed to dismiss Counts 1 and 4 of the Indictment at the time of sentencing.

The PSR includes a calculation of the base offense level, explaining that the base offense level for robbery is 20 points; however, the base offense level for the Defendant is derived from that 20 point base plus a two-level enhancement because the property of a financial institution was the object of the offense, a five-level enhancement because a firearm was brandished or possessed, and a two-level enhancement because the conspirators intended to physically restrain individuals to facilitate the commission of the offense or to facilitate escape. *See* U.S.S.G. §§ 2B3.1(a), 2B3.1(b)(1), 2B3.1(b)(2)(C), and 2B3.1(b)(4)(B).

---

[1] Because of the prior activity and other investigative information, members of the bank robbery task force had previously notified employees of VIA Credit Union about the suspected upcoming robbery, and no employees were present in the building the morning of July 3, 2015.

The Defendant filed a Sentencing Memorandum [ECF No. 273] in which she argues that her offense level should be reduced to a minor, intermediary, or minimal participant pursuant to U.S.S.G. § 3G1.2; her offense level should not be increased for use of a gun during the robbery pursuant to U.S.S.G. § 2B3.1(b)(2)(C); and her offense level should not be increased for the intent to restrain a victim during the robbery pursuant to U.S.S.G. § 2B3.1(b)(4).

Finally, the Defendant requests a variance in consideration of 18 U.S.C. § 3553(a) sentencing factors.

The Government supports only a minor participant reduction, *(see* Gov.'s Sentencing Mem. 9, ECF No. 280 ("Given all these factors, [the Defendant] should be categorized as a minor participant, and her role was too important for a minimal participant reduction."), and otherwise contends that the enhancements regarding imposition of the gun and restraint enhancements are appropriately applied.

## ANALYSIS

**A.     Role in the Offense**

As relevant here, U.S.S.G. § 3B1.2 provides for a reduction in offense level for a defendant who played a lesser role in an offense. If a defendant was a minimal participant in any criminal activity, the defendant receives a four-level reduction. U.S.S.G. § 3B1.2(a). If the defendant was a minor participant in any criminal activity, the defendant receives a two-level reduction. U.S.S.G. § 3B1.2(b). Defendants falling in between these two categories receive a three-level reduction. The guidelines explain that "[t]he determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based upon the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the

particular case." U.S.S.G. § 3B1.2, cmt. n.3(C). The commentary lists non-exhaustive factors for courts to consider:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* A defendant is considered a minimal participant—entitled to a four-level reduction—if she is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. Among the least culpable are those who lack knowledge or understanding of the scope and structure of the enterprise and of the activities of others. *Id.* By comparison, a minor role adjustment of two points is appropriate if a defendant is "less culpable than most other participants," but whose role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. n.5.

A defendant bears the burden of proving, by a preponderance of the evidence, that she is entitled to a role reduction. *United States v. Haynes*, 582 F.3d 686, 709 (7th Cir. 2009). The Court must evaluate the Defendant's role "in context of the other participants in the scheme, keeping in mind that a minor [or minimal] player is substantially less culpable than the average participant, not the leaders." *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011) (citing *United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008)); *see also United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007) (holding that when assessing whether a defendant is entitled to a role reduction, her role "should be compared to that of the average member of the conspiracy, not with the leaders").

In this case, the parties do not dispute the factual role of the Defendant in the attempted robbery. Rather, they focus on categorizing her role pursuant to the guidelines. The Defendant contends that she was a minimal participant in the offense because she stated that she had no hand in coming up with the idea of the robbery, was not involved in planning the robbery, provided no information, equipment, or weapons to assist with planning the robbery, and she was not to receive the proceeds from the robbery. (Def.'s Sentencing Mem., Law Enf't Interview, Ex. A 37, 47, ECF No. 273-1.) Moreover, the Defendant argues that she was not going to enter the bank and that she did not drive with her co-Defendants to the bank.

The Government concedes that the Defendant was a minor participant, but argues that she is not a minimal participant, because she provided two vehicles for the robbery crew's use, she registered the white Pontiac under her name (because her boyfriend, co-Defendant Sutton, could not legally register the car), her statements during her interview appear to indicate that she knew she was involved in a crime because she was worried about getting in trouble because the car was registered in her name and she might have to "snitch" on her co-Defendants, and she admitted that the co-Defendants told her "they were going to Marion and hit a bank." (*Id.* at 23–24.) Moreover, the Defendant allowed the robbery crew to use her apartment as a "staging area," and she seemed to indicate that her apartment would also be the hideout. She also saw her co-Defendants dress in all black, she saw one co-Defendant with a gun, and she understood that she was supposed to drive in a manner to ensure that "the police won't see the plates." (*Id.* at 26, 27, 33, 47.) The Government contests the Defendant's claim that she was not going to receive the proceeds of the robbery because the Defendant admitted she was struggling financially with rent and loan payments. (*Id.* at 37.) The Government also points out that the Defendant lied during

her interview. For instance, she claimed that she had never previously been to the gas station, and then backtracked. (*Id.* at 29–30.)

The Court finds that the Defendant should receive a two-level reduction as she was a minor participant in the offense at issue. *United States v. Kerr*, 13 F.3d 203, 206 (7th Cir. 1993) ("[T]he fact that one plays a much lesser role than another does not mean that one is a minor participant"); *United States v. Hua*, 59 F. App'x 125, 127 (7th Cir. 2003) ("Even if the nature of his participation suggests that [the defendant] played a lesser role, the district court was not constrained to award the adjustment."). In this case, though the Defendant did not make decisions regarding tactics, she knew her co-Defendants were going to commit a robbery, understood that it was an armed robbery because she saw her co-Defendants dress in all black and saw one of the co-Defendants with a gun (and therefore understood the "hit" was an armed robbery), and she participated in the offense when she provided lookout and getaway (license plate cover up) services. Notably, the Defendant also participated in planning the robbery. She allowed her co-Defendants to use her home to get ready for the robbery and joined the "planning trip" to survey the bank on July 2, 2015, the day before the robbery.

**B.     Use of a Weapon**

U.S.S.G. § 2B3.1(b)(2)(C) provides a five-level enhancement "if a firearm was brandished or possessed" in connection with a robbery. Pursuant to U.S.S.G. § 1B1.3(a), a defendant who participates in a jointly undertaken criminal activity—"a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy"—is "accountable for the conduct (acts and omissions) of others that

6

was within the scope of the jointly undertaken criminal activity; in furtherance of that criminal activity; and reasonably foreseeable in connection with that criminal activity."

The Defendant contends that any possession or use of a firearm was not foreseeable by her. The Court disagrees. The Defendant stated that the co-Defendants "said they were going to Marion and hit a bank" (Def.'s Sentencing Mem., Law Enf't Interview, Ex. A 25). She also saw them dress in dark clothing with masks and gloves. Accordingly, she knew of the plan. She stated that she saw one of her co-Defendants with a gun (*Id.* at 25–26 ("It was just a black gun, just what I saw.")), and she saw one of her co-Defendants "put the gun in his hip and I followed in the car." (*Id.* at 33.) The use or possession of a firearm in the commission of the robbery was therefore reasonably foreseeable by the Defendant.

## C. Use of a Restraint[2]

---

[2] The Court notes that the Defendant objects to the use of her statements concerning zip ties, made during a proffer interview on July 20, 2017, pursuant to Federal Rule of Evidence 410(a)(3) and (4)'s admonition against using statements made during plea negotiations and Federal Rule of Criminal Procedure 11(c), which states that "admissibility or inadmissibility of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Moreover, the Defendant contends that the Agreement made between herself and the Government prior to the proffer session states that her proffer would not be used against her. (Def.'s Sentencing Memo Exhibit B, ECF No. 273-2.) The Government argues that the Federal Rules of Evidence do not apply at sentencing, and Seventh Circuit case law maintains that a defendant can waive any objection to the use of the Government's proffered statements at sentencing when the agreement allows for such a use. *See United States v.* Williams, 298 F.3d 688, 693–94 (7th Cir. 2002). The Court finds that pursuant to Seventh Circuit case law, the Court will consider the proffered statements only as detailed in the Agreement itself. As the agreement states:
> No Use at Sentencing: Information disclosed by [the Defendant] will not be used to determine the applicable Sentencing Guideline range. Such information may be disclosed to the court, but will not be utilized to enhance the guideline range. This restriction does not apply to information known to this office before the interview, in a prosecution for perjury or giving a false statement, in the event there is a breach of the plea agreement, or in determining the existence of any prior criminal convictions or sentences.

*See* Def.'s Sentencing Memo Exhibit B. at ¶ 6. Moreover, because the Court rules below on the Defendant's objection to the restraint enhancement at issue without examining the argument concerning the Defendant's knowledge of the use of zip-ties, the Court need not reach this issue beyond this discussion here.

In the case of an attempted robbery, the offense level is calculated by using the robbery guideline, "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). U.S.S.G. § 2B3.1(a) states that the base offense for a robbery is 20 points, and § 2B3.1(b)(4)(B) adds that "if any person was physically restrained to facilitate commission of the offense or to facilitate escape," then the base offense level is increased by two. As stated above, pursuant to U.S.S.G. § 1B1.3(a), a defendant who participates in a jointly undertaken criminal activity is accountable for the conduct of others that was within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity.

The Government argues that use of a restraint does not only include items intended to bind the hands of victims, but also encompasses leading tellers around at gunpoint or moving victims around within the bank in order to accomplish the robbery. *United States v. Black*, 636 F.3d 893, 900 (7th Cir. 2011) ("[T]he fundamental characteristic of the physical-restraint enhancement is to punish one for depriving a person of his freedom of physical movement . . . ."); *United States v. Eubanks*, 593 F.3d 893, 899–900 (7th Cir. 2010).

Though the Defendant generally appears to argue lack of foreseeability—that all of the guns and gear that were to be used in the robbery were brought by one or more of her co-Defendants without the Defendant's own knowledge, the Court disagrees. The evidence demonstrates that the Defendant signed on to participate in what she knew was going to be a "hit" on a bank, and she saw one of her co-Defendants with a gun prior to leaving her apartment in her car. Accordingly, it can be established with reasonable certainty that the Defendant understood an armed robbery was to take place in which a gun would be used against those inside the bank, to restrain them in order to accomplish the robbery.

## CONCLUSION

For the reasons stated above, the Defendant's objections to the PSR are GRANTED IN PART and OVERRULED IN PART, as stated in this Order. At the time of sentencing, the Court will address the portion of the Defendant's Sentencing Memorandum [ECF No. 273], in which the Defendant requests a variance in consideration of 18 U.S.C. § 3553(a) sentencing factors.

SO ORDERED on January 26, 2018.

<u>s/ Theresa L. Springmann</u>
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT